UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| ADDISON LUDWIG,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>ELK-POINT JEFFERSON SCHOOL DISTRICT 61-7, TRAVIS ASLESEN, SHERI HARDMAN,<br><br>　　　　　　Defendants. | 4:18-CV-04091-LLP<br><br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL<br><br>Docket No. 19 |

**INTRODUCTION**

This matter is pending before the court on plaintiff Addison Ludwig's complaint alleging defendants, her former high school, its principal (Mr. Travis Aslesen), and superintendent (Ms. Sheri Hardman), violated her rights under the First and Fourteenth Amendments and under Title IX.  See Docket No. 1. She also asserts various state-law torts.  Id.  Defendants filed a motion to compel Ms. Ludwig to produce certain discovery, Docket No. 19, and the district court, the Honorable Lawrence L. Piersol, referred that motion to this magistrate judge for determination pursuant to 28 U.S.C. § 636(b)(1)(A).  See Docket No. 22.

## FACTS

The following facts are drawn from Ms. Ludwig's complaint. This is not to suggest any imprimatur of veracity from the court as to those allegations. The allegations are simply reproduced here to provide context for the motion under consideration.

During the 2017-2018 school year, Ms. Ludwig was a senior high school student at defendant school district. The school newspaper, "The Husky," featured a section called "Senior Spotlights" in which different seniors at the school were interviewed and the interview was printed in The Husky. On September 7, 2017, Ms. Ludwig was interviewed for a Senior Spotlights feature. Asked what her hobbies were, she responded she liked to "Netflix n' Chill with my boyfriend," among other activities.

The complaint asserts that the phrase "Netflix n' Chill" has more than one meaning. One meaning is, literally, to watch Netflix and relax. Another meaning is a euphemism for having sex, a meaning Ms. Ludwig claims she was innocent of.

Ms. Ludwig asserts a male senior student from the 2016-2017 school year also said "Netflix n' Chill" was one of his hobbies, it was reported as part of the male's Senior Spotlight interview with The Husky, and there were no repercussions. She also asserts a male student wore to school a shirt with the phrase "Netflix n' Chill" printed on it and there were no repercussions for him.

Ms. Ludwig alleges she was penalized, punished and disciplined for stating in her Senior Spotlight interview that one of her hobbies was "Netflix n'

Chill." Furthermore, she alleges on September 13, 2017, Mr. Aslesen confronted Ms. Ludwig about the Netflix statement alone in his office, in violation of school policy which indicates all students should have a same-gender staff member present when gender-sensitive interrogations are conducted. She alleges Mr. Aslesen made her look up the definition of "Netflix n' Chill" on her laptop and read the definition out loud, which included the definition of a euphemism for sex. She alleges Mr. Aslesen accused her of broadcasting through her Senior Spotlight interview that she made a hobby of having sex with her boyfriend. Ms. Ludwig alleges this episode alone with Mr. Aslesen in his office was humiliating, uncomfortable, shaming and embarrassing for her.

As a result of this incident, Mr. Aslesen revoked Ms. Ludwig's senior privileges and honor study hall, removed her as editor of The Husky, moved her to a new home room, and required her to write a retraction and apology to be printed in both The Husky and the local newspaper of general circulation.

Ms. Ludwig alleges after this meeting, Mr. Aslesen did indeed contact the local newspaper, the "Leader-Courier,"[1] and shared federally-protected school information about her with the paper as well as made defamatory comments about her to the editor. Ms. Ludwig alleges Mr. Aslesen likewise shared private information about her with a fellow student.

---

[1] The website for the Leader-Courier & Times describes itself alternatively as the newspaper of "Southern Union County," of "Dakota Dunes/North Sioux City," and of "Dakota Dunes, Elk Point, Jefferson, & North Sioux City." See www.leadercourier-times.com, last checked July 31, 2019. All communities referenced are in the far southeastern corner of South Dakota.

Ms. Ludwig alleges her mother complained about Mr. Aslesen's conduct and a "sham" investigation was conducted, which exonerated him. She alleges the school district was on notice of Mr. Aslesen's questionable sexual misconduct because two girls had made a report in January, 2013, that Mr. Aslesen had made inappropriate sexual comments to them and looked them "up and down."

Defendants filed the instant motion to compel, asserting Ms. Ludwig had not provided them with her initial disclosures as required by FED. R. CIV. P. 26(a)(1). See Docket No. 20. They also assert Ms. Ludwig failed to provide discovery responses to interrogatories and requests for production served on her. Id. In defendants' reply brief, they indicate Ms. Ludwig provided many of the requested items of discovery *after* the instant motion was filed. See Docket No. 24.[2] The court discusses the remaining outstanding discovery disputes below.

## DISCUSSION

### A.  Interrogatory No. 5

Defendants served Ms. Ludwig with the following interrogatory:

**INTERROGATORY NO. 5**  Identify and describe any and all handwritten or typewritten notes, reports, texts, diaries, calendars, messages, letters, photographs, videos, inquiries, statements, or other communication by you or on your behalf, from August 1, 2014, through the conclusion of high school and to the date of these interrogatories, regarding any issue or claim raised in your Complaint, including but not limited to email, text, instant

---

[2] Defendants indicate there is no longer any outstanding dispute as to Interrogatories Nos. 8 & 14, Requests for Production Nos. 6 & 7, and that portion of initial discovery concerning production of documents as required by FED. R. CIV. P. 26(a)(1)(A)(ii).

messenger, Facebook, Twitter, Instagram, or any other digital platform where communication may take place, and any other communication by you or on your behalf, and for each, state:

> (a) Name address [sic] of person making or providing the statement, communication, or taking the photograph or video;
> (b) Date the statement, photograph, or video was made;
> (c) If the statement is oral, the substance of such statement and the name and present address of each individual who heard it made;
> (d) If the statement is written, the substance of such statement, the name and present address of the person who took the statement, and the custodian of the statement;
> (e) Manner in which such statement was recorded;
> (f) Name and address of person who has control or custody of such statement, communication, photograph, or video;
> (g) Subject matter of such statement, communication, photograph, or video; and
> (h) Description of what each statement, communication, photograph, or video contains.

See Docket No. 23-9 at p. 5.[3]

Ms. Ludwig provided the following responses to Interrogatory No. 5:

ANSWER: Plaintiff objects to this interrogatory on the grounds that it is overly broad and unduly burdensome. Plaintiff further objects to this interrogatory on the grounds it inquires of information protected by the attorney-client privilege and/or work-product doctrine.

SUPPLEMENTAL ANSWER: Plaintiff objects to this interrogatory on the grounds that it is overly broad and unduly burdensome. Plaintiff further objects to this interrogatory on the grounds it inquires of information protected by the attorney-client privilege and/or work-product doctrine. Plaintiff's Privilege Log is attached herewith.

See Docket No. 23-9 at pp. 5-6.

---

[3] The court interprets this request to call for any information "regarding any issue or claim raised in [Ms. Ludwig's] complaint," and NOT "any … communication."

Defendants seek an order compelling Ms. Ludwig to provide the names of individuals providing or making the statement, the date of the statement, the substance of the statement, and the name of the custodian of the document. Also, while defendants admit Ms. Ludwig provided a privilege log, they assert the log does not comply with Rule 26(b)(5) and defendants seek this court's order compelling Ms. Ludwig to produce a log that does comply with the rule.

Ms. Ludwig's response to defendants' motion to compel does not elaborate on her written objections that the discovery is "overly broad and unduly burdensome." See Docket No. 23. Instead, Ms. Ludwig's only response is to allege she has repeatedly, both before and after the motion to compel was filed, given defendants the discovery they seek.

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery in civil cases pending in federal court:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

See FED. R. CIV. P. 26(b)(1). Rule 26 contains specific limitations relative to electronic discovery and other objections to providing discovery:

> (B)  *Specific Limitations on Electronically Stored Information.* A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the

6

party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).  The court may specify the conditions for the discovery.

(C)    *When Required.*  On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

    (i)    the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

    (ii)    the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

    (iii)    the proposed discovery is outside the scope permitted by Rule 26(b)(1).

<u>See</u> Fed. R. Civ. P. 26(b)(2)(B) and (C).  A party claiming a privilege as to requested discovery has the burden of proving the basis for the application of the privilege:

When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

    (i)    expressly make the claim; and

    (ii)    describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

<u>See</u> Fed. R. Civ. P. 26(b)(5)(A).  If a party fails to respond to a proper request for discovery, or if an evasive or incomplete response is made, the party requesting the discovery is entitled to move for a motion compelling disclosure after having

made a good faith effort to resolve the dispute by conferring first with the other party.  See FED. R. CIV. P. 37(a).

The scope of discovery under Rule 26(b) is extremely broad.  See 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 36-37 (1970) (hereinafter "Wright & Miller").  The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.  To that end, either party may compel the other to disgorge whatever facts he has in his possession."  8 Wright & Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08, 67 S. Ct. 385, 392, 91 L. Ed. 2d 451 (1947)).  The Federal Rules distinguish between discoverability and admissibility of evidence.  FED. R. CIV. P. 26(b)(1), 32, and 33(a)(2).  Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial.  These considerations are not inherent barriers to discovery, however.

The advisory committee's note to the 2000 amendments to Rule 26(b)(1) provide guidance on how courts should define the scope of discovery in a particular case:

> Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action.  The good-cause standard warranting broader discovery is meant to be flexible.

> The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action.  The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be

defined with precision.  A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action.  For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. ... In each case, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.

The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. ... When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action.  The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

See FED. R. CIV. P. 26(b)(1) advisory committee's note.

The same advisory committee's note further clarifies that information is discoverable only if it is relevant to the claims or defenses of the case or, upon a showing of good cause, to the subject matter of the case.  Id.  "Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings.  Relevancy ... encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " E.E.O.C. v. Woodmen of the World Life Ins. Society, 2007 WL 1217919 at *1 (D. Neb. Mar. 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required."  Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380

(8th Cir. 1993)). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

Discoverable information itself need not be admissible at trial; rather, "discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence." See FED. R. CIV. P. 26(b)(1) advisory committee's note. Additionally, Rule 26(b)(2) requires the court to limit discovery if it determines, for example, that the discovery sought is unreasonably cumulative or duplicative or that "the burden or expense of the proposed discovery outweighs its likely benefit..." See FED. R. CIV. P. 26(b)(2)(C); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").

Once the requesting party has made a threshold showing of relevance, the burden shifts to the party resisting discovery to show specific facts

demonstrating that the discovery is not relevant, or how it is overly broad, burdensome, or oppressive. Penford Corp. v. National Union Fire Ins. Co., 265 F.R.D. 430, 433 (N.D. Iowa 2009); St. Paul Reinsurance Co. v. Commercial Financial Corp., 198 F.R.D. 508, 511 (N.D. Iowa 2000). The articulation of mere conclusory objections that something is "overly broad, burdensome, or oppressive," is insufficient to carry the resisting party's burden--that party must make a specific showing of reasons *why* the relevant discovery should not be had. Cincinnati Ins. Co. v. Fine Home Managers, Inc., 2010 WL 2990118, *1 (E.D. Mo. 2010); Burns v. Imagine Films Entertainment, Inc., 164 F.R.D. 589, 593 (W.D.N.Y. 1996).

Several courts have determined that where the discovery requests are relevant, the fact that answering them will be burdensome and expensive is not in itself a reason for a court's refusing to order discovery which is otherwise appropriate. See In re Folding Carton Antitrust Litigation, 83 F.R.D. 260, 265 (N.D. Ill. 1979) (stating that "[b]ecause the interrogatories themselves are relevant, the fact that answers to them will be burdensome and expensive 'is not in itself a reason for refusing to order discovery which is otherwise appropriate' "); Alexander v. Parsons, 75 F.R.D. 536, 539 (W.D. Mich. 1977) (stating that "the mere fact discovery is burdensome . . . is not a sufficient objection to such discovery, providing the information sought is relevant or may lead to the discovery of admissible evidence"); and Burns, 164 F.R.D. at 593 (determining that the fact that answering interrogatories will require the objecting party to expend considerable time, effort, and expense consulting,

reviewing, and analyzing huge volumes of documents and information is an insufficient basis for an objection).  Moreover, if discovery requests are relevant, the fact that they involve work, which may be time consuming, is not sufficient to render them objectionable.  See United States v. Nysco Labs., Inc., 26 F.R.D. 159, 161-62 (E.D.N.Y. 1960) and Rogers v. Tri-State Materials Corp., 51 F.R.D. 234, 245 (N.D. W. Va. 1970) (stating that "[i]nterrogatories, otherwise relevant, are not objectionable and oppressive simply on grounds [that] they may cause the answering party work, research and expense").

Ms. Ludwig's objection that the discovery request is overly broad and unduly burdensome does not carry the day.  She never explains what burden is involved or why it is undue.  However, defendants' showing is likewise lacking.  Defendants never explain why the information they seek is relevant—how does it pertain to the issues, claims or defenses?  What is it defendants hope to find?  Defendants do not address these questions.  And the answers are not altogether self-evident.  It is defendants' burden to make an initial showing of relevance.

The court notes that Ms. Ludwig's complaint is fairly surgical, involving an interview for the school newspaper on September 7, 2017, and an interaction with the principal on September 13, 2017.  The court retains the power to limit discovery to what is proportional to the case, including the amount in controversy (likely fairly small), the parties' access to relevant information, and the parties' resources (Ms. Ludwig is a college student).  Interrogatory number 5 asks for virtually every bit of communication, much of

it digital, for a five-year period (2014 to 2019). That is excessive given the circumstances of this case. The court will limit Ms. Ludwig's obligation to respond to a period of two years—one year predating September, 2017, and one year post-dating that time. Thus, she should answer interrogatory number 5 for the period from September, 2016, to September, 2018. This restriction is especially appropriate given Ms. Ludwig's willingness to make her cell phone available for inspection, as discussed in further detail below.

The court's directive to Ms. Ludwig includes *everything* that is responsive to interrogatory number 5. If there is information truly privileged called for by this interrogatory, Ms. Ludwig must provide a revised privilege log that complies with Rule 26(b)(5). That is, Ms. Ludwig must (1) expressly identify a particular document or information being withheld, (2) describe its nature with enough detail to allow defendants to assess the privilege without revealing the information that is privileged, and (3) expressly identify what privilege she is asserting.

As to this and all other discovery requests addressed in this order, Ms. Ludwig must (1) produce the requested discovery or (2) produce the revised privilege log as to any documents or information withheld and these actions must take place no later than 30 days from the date of this order.

## B.    Interrogatory No. 10

Ms. Ludwig responded to this interrogatory by providing the information requested, but also contemporaneously asserting an objection based on attorney-client privilege and/or work product privilege. Because of the duality

of Ms. Ludwig's response, defendants are at a loss to ascertain whether any documents or information are being withheld pursuant to an assertion of privilege. Accordingly, they request an order from the court directing Ms. Ludwig to clearly state whether any information is being withheld and, if so, to provide a privilege log for such information in accordance with the dictates of Rule 26(5).

The court grants this request in its entirety. The practice of both giving information/documents and simultaneously asserting an objection or privilege is a deplorable practice. It deprives the discovery response of the needed clarity to know whether any information or documents are being withheld. This subverts the twin aims of the federal rules to provide a just, speedy and inexpensive determination of federal civil claims. See FED. R. CIV. P. 1. Ms. Ludwig is ordered to serve a new discovery response to interrogatory number 10 within 30 days of the date of this order clearly indicating whether any information is being withheld pursuant to privilege. If so, Ms. Ludwig is ordered to provide defendants with a revised privilege log that complies with Rule 26(b)(5) as detailed above.

## C.    Interrogatory No. 12

In this discovery request, defendants ask Ms. Ludwig if she had or possessed a cell phone on September 13, 2017, and, if so, to produce it to defendants for examination. See Docket No. 23-9 at p. 9. Ms. Ludwig agreed (ultimately) to make her cell phone available for inspection, but only for information relevant to the pending matter and excluding attorney-client and

work-product information.  Id.  Ms. Ludwig provided defendants with a cell phone log depicting calls made from it on the date specified and also supplied a privilege log.  Id.

Defendants assert they should not be restricted in their examination of Ms. Ludwig's cell phone by her own conceptions of what is "relevant" evidence and also assert the privilege log does not comply with Rule 26(b)(5).  They seek this court's order directing Ms. Ludwig to produce her cell phone for apparently unfettered examination except for those items adequately supported by a proper privilege log.  As with interrogatory number 5, defendants never address relevancy with regard to their request to inspect Ms. Ludwig's phone, other than to object to being hamstrung by Ms. Ludwig's concept of relevancy.

As the Supreme Court has observed, the term "cell phone" is somewhat of a misnomer.  The electronic devices nearly all Americans have practically appended to their bodies might just as well be called filing cabinets, video cameras, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps or newspapers.  Riley v. California, 573 U.S. 373, 393 (2014).  Overarching privacy concerns are implicated by a search of one's cell phone.  Id.  Typical cell phones (in 2014) have a standard capacity to hold 16 gigabytes of information, which translates into millions of pages of text, thousands of pictures, or hundreds of videos.  Id. at 394.  This results in a device the size of a cigarette package that contains many distinct types of information which potentially allows a viewer to determine the sum of an individual's private life to be reconstructed.  Id.  People don't need to create diaries these days.  The

15

date and location stamp on many cell phone files and the GPS data from one's phone can recreate the date, time and location of romantic assignations, religious affiliations, private medical information, vacations, and a whole host of erstwhile private information.  Id.

As noted above, Ms. Ludwig's complaint is fairly surgical in time and in the incidents which form the basis of her claims.  She has not put her whole life under the microscope merely by filing this complaint.  The court restricts defendants' examination of her phone to files created between September, 2016, and September, 2018, inclusive.  Further, defendants shall restrict their search to any items having to do with Netflix 'n Chill and the specific incidents set forth in Ms. Ludwig's complaint, including Ms. Ludwig's damages.  Any phone call, text message, or data associated with Ms. Ludwig's current counsel of record or past counsel of record (Mr. Timothy James), shall not be viewed by defendants.  As to any such items, defendants shall notify Ms. Ludwig of the existence of these items associated with her counsel.  Ms. Ludwig shall then have 30 days from the date of notice from defendants to decide whether to assert a claim of privilege.  If Ms. Ludwig does claim privilege, she must, within those 30 days, submit a privilege log to defendants that complies with Rule 26(b)(5).

**D.      Interrogatory No. 15 and Request for Production No. 17**

Defendants asked the following in their Interrogatory No. 15:

**INTERROGATORY NO. 15** Are you claiming monetary damages?
If so, state with specificity the amount of damages you are claiming
and the facts you claim support your claim for damages.

<u>See</u> Docket No. 23-9 at p. 10.  Ms. Ludwig gave the following answers:

> ANSWER:  Plaintiff has not yet calculated her damages to date and specifically objects to the production of her attorney's method of calculation of said damages on the basis that it seeks information protected by the attorney-client privilege and/or attorney work-product doctrine.  Subject to and without waiving said objection, Plaintiff anticipates presenting claims for nominal damages, compensatory damages, punitive damages and/or recovery of attorney fees.
>
> SUPPLEMENTAL ANSWER:  Plaintiff has not yet determined her special damages.  As to general damages and punitive damages those are amounts are [sic] to be determined by a jury.  Plaintiff may or may not make a specific request to the jury.
>
> Discovery hasn't been completed.  Plaintiff will supplement as discovery continues.

<u>See</u> Docket No. 23-9 at p. 10.

Request for production number 17 simply requests all documents which Ms. Ludwig asserts supports her claim for damages.  <u>Id.</u> at p. 17.  Ms. Ludwig answered this discovery request by asserting the attorney-client privilege and/or work-product doctrine without providing a privilege log in conformity with Rule 26(5).  <u>Id.</u>  She also stated "Plaintiff has not affirmatively calculated her damages."  <u>Id.</u>

Defendants demand "immediate production of the information requested" and also seek an order from the court prohibiting Ms. Ludwig from introducing any evidence of damages at trial if the requested information and documents are not immediately produced.

A calculation of one's damages and any supporting documents are among the items a plaintiff is required to include in her initial voluntary Rule 26 disclosures.  <u>See</u> Fed. R. Civ. P. 26(a)(1)(A)(iii).  There is nothing secret or

privileged about this information.  It is a claim or defense disputed and in issue in this lawsuit.  If Ms. Ludwig is claiming emotional distress damages, she should so state and turn over any diary entries, letters, counseling records and fees, etc. that pertain to this.  If publication of her information in the local newspaper caused her embarrassment or the loss of job, scholarship, or college opportunities, that must be asserted and supported.  Applications she made that were denied would be documents in support of such damages.

This case is nearly two years removed now from the events detailed in Ms. Ludwig's complaint.  She and her lawyers must have some idea, no matter how general, of her categories of damages and documents that may support those damages.  Also, the obligation to provide discovery and to supplement it is ongoing throughout the litigation.  <u>See</u> Fed. R. Civ. P. 26(e).  As Ms. Ludwig and her lawyers are able to clarify their damages as discovery progresses, they must update defendants with new information and documents.  Ms. Ludwig is ordered to comply fully with interrogatory 15 and request for production 17 within 30 days from the date of this order.  Defendants may raise their argument for exclusion of damages evidence on the eve of trial if no information, or incomplete or insufficient information, is given to them by that date.  At this early stage, the court will not grant an *in limine* order on this showing.

**E.     Request for Production No. 1**

Ms. Ludwig responded to this document request by providing documents requested, but also contemporaneously asserting an objection based on

attorney-client privilege and/or work product privilege.  Because of the duality of Ms. Ludwig's response, defendants are at a loss to ascertain whether any documents are being withheld pursuant to an assertion of privilege. Furthermore, the privilege log provided by Ms. Ludwig does not provide the information required by Rule 26(b)(5).

Defendants' motion to compel is granted in full as to request for production number 1.  Ms. Ludwig shall, within 30 days of this order, file a new response to request for production number 1 that clearly indicates whether any documents are being withheld.  As to any documents withheld, Ms. Ludwig must file a privilege log within 30 days that conforms to the dictates of Rule 26(b)(5).

**F.     Request for Production No. 4**

Request for production number 4 requests Ms. Ludwig to provide any documents identified in response to interrogatory number 5, reprinted in full above.  Ms. Ludwig responded with an assertion of attorney-client privilege and/or attorney work-product doctrine as to all such documents.  Although Ms. Ludwig provided a privilege log, that log simply makes a blanket assertion of privilege for all "correspondence between Plaintiff and Plaintiff's counsel." Defendants object that the privilege log provided does not comply with the requirements of Rule 26(b)(5).

As indicated above in its ruling on interrogatory number 5, the court *sua sponte* restricts Ms. Ludwig's obligation to provide documents to the period from September, 2016, to and including September, 2018.  If there are any

documents within that date range that Ms. Ludwig claims are privileged, she must file a revised privilege log that conforms to Rule 26(b)(5) within 30 days from the date of this order.

## G.     Request for Production No. 16

Request for production number 16 requested Ms. Ludwig to produce all her cell phone records for September 13, 2017, or, in the alternative, to execute an "Authorization allowing the [defendants] to obtain these records." <u>See</u> Docket No. 23-9 at p. 16.  Ms. Ludwig did execute the authorization, but also asserted a claim of attorney-client privilege.  Defendants assert Ms. Ludwig's assertion of privilege does not comply with Rule 26(5).  The court finds the resolution of this disputed discovery request is encompassed by the court's ruling on interrogatory number 12.  The court directs the parties to proceed with request for production number 16 in like manner as directed with regard to interrogatory number 12.

## H.     Rule 26(a)(1) Initial Disclosures

In her initial disclosures, Ms. Ludwig listed 24 names of individuals she believes are likely to have discoverable information, but for 17 of these persons, only the name was listed with no address or other contact information.  She maintains she does not have to secure addresses because the witnesses disclosed "are equally available" to both Ms. Ludwig and defendants.

Defendants argue Ms. Ludwig is under a duty to make reasonable inquiry of the witnesses she discloses in her initial disclosures and addresses are required by Rule 26(a)(1).  Defendants assert they need the addresses so as

to be able to contact the witnesses and make decisions about who they wish to depose.

Rule 26(a)(1) provides explicitly that addresses need not be provided by the disclosing party if they are not known: "a party must, without awaiting a discovery request, provide to the other parties: (i) the name and, *if known,* the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, . . ." See FED. R. CIV. P. 26(a)(1)(A)(i) (emphasis added). The cases cited by defendants in support of their assertion are inapposite.

The case of St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp., 198 F.R.D. 508, 514 (N.D. Iowa 2000), was not interpreting a party's duty to provide initial disclosures under Rule 26(a)(1). In another case cited by defendants, the nondisclosing party *knew, but refused* to disclose in its initial disclosures the contact information for 3,300 identified witnesses who were the party's employees. See Tamas v. Family Video Movie Club, Inc., 304 F.R.D. 543, 545 (N.D. Ill. 2015). Likewise, in In re Independent Serv. Orgs. Antitrust Litigation, 168 F.R.D. 651, 653 (D. Kan. 1996), the nondisclosing party was subject to a deposition, not the initial disclosures under Rule 26(a)(1), and the information *was available* to the nondisclosing party from its own employees. This distinguishes these authorities from the instant case. Defendants have not adduced any proof that Ms. Ludwig *knows* the addresses of the 17 witnesses and is simply withholding that information.

The case of <u>Sender v. Mann</u>, 225 F.R.D. 645, 651 (D. Colo. 2004), did involve initial disclosures under Rule 26(a)(1). In that case, the plaintiff had identified by name and address 322 investors and brokers who "had knowledge" regarding defendant's alleged Ponzi scheme. <u>Id.</u> at 648-49. Although plaintiff had supplemented its Rule 26 initial disclosures multiple times, plaintiff never gave any greater specificity about what, exactly, these witnesses knew. <u>Id.</u> at 649. Furthermore, on the very eve of trial, plaintiff remained coy regarding which of these witnesses it would call to testify at trial. <u>Id.</u>

The court took issue with plaintiff's too-general identification of what each witness knew and whether they would be called to testify at trial. <u>Id.</u> at 650. On the brink of trial, plaintiff's counsel admitted at a hearing that he had not even interviewed all the witnesses listed. <u>Id.</u> The court held, in the context of the facts of that case, a "reasonable investigation" required by Rule 26(a)(1) required more of plaintiff's counsel. <u>Id.</u>

In particular, the court pointed out in connection with defendants' summary judgment motion, plaintiff had supplied two affidavits from among the 322 witnesses listed and the affidavits set forth very detailed information. <u>Id.</u> Plaintiff had never updated its initial disclosures to provide this information to defendants. <u>Id.</u> Furthermore, in its pretrial submissions, plaintiff stated one of the witnesses would testify about "scripts" defendants had assisted in preparing to carry out the Ponzi scheme, and neither the

affidavits submitted in connection with summary judgment practice nor the plaintiff's initial disclosures made any mention of these "scripts." Id.

The Sender case is distinguishable on numerous grounds. First, the sheer number of witnesses involved—322—pales in comparison to the 17 witnesses involved here. Second, the missing information in Sender was not the addresses, which the very text of Rule 26 leaves open. Finally, initial disclosures are subject to a continuing duty to supplement as the case progresses. In Sender, despite a full opportunity for discovery and summary judgment practice, the plaintiff had never supplemented its initial disclosures to include information plaintiff indisputably *knew*, as evidenced by the witness affidavits and the description of at least one witness's anticipated trial testimony.

Ms. Ludwig need not disclose addresses for the 17 witnesses at this time if she truly does not know them. But both parties have a duty to supplement their initial disclosures as the case moves forward. See FED. R. CIV. P. 26(e). If Ms. Ludwig gains information about the 17 witnesses' contact information and/or greater detail regarding the subjects of their knowledge, she is under a duty to supplement her initial disclosures and to tell defendants about this later-acquired information. Id. Failure to do so may result in evidence from these witnesses being excluded at trial, in hearings, or during motions practice. See FED. R. CIV. P. 37(c)(1). As an additional sanction for violating one's discovery duties, the jury may be told of the party's failure to honor its duty to provide or supplement discovery and attorney's fees and expenses for

defendants occasioned by the failure to disclose may be ordered.  Id. at (c)(1)(A) & (B).

## I.    Sanctions

Defendants make passing references to their desire to receive attorney's fees and costs as sanctions for having to file the instant motion to compel. Although Ms. Ludwig's response to the motion asserts the discovery was provided repeatedly to defendants, both before and after the motion to compel was filed, defendants deny this and argue Ms. Ludwig provides no proof of such actions such as a certificate of service.

Rule 37 requires a court which grants a motion to compel to require the nonmoving party to pay the moving party's attorney's fees—the rule uses the term "must."  Sanctions are the rule, then, unless the nonmoving party can establish the existence to one of three exceptions:  (1) the movant filed the motion before attempting in good faith to obtain the discovery without court action; (2) the nonmoving party's position was substantially justified; or (3) other circumstances make an award of expenses unjust.  See FED. R. CIV. P. 37(a)(5)(A).  If the motion is granted in part and denied in part, the court "may" apportion the reasonable expenses for the motion.  Id. at (a)(5)(C).

If defendants wish to pursue monetary sanctions in connection with this partial granting of their motion to compel, the court directs them to file a motion seeking those sanctions supported by affidavits and documentary evidence as set forth in DSD LR 54.1C.  Ms. Ludwig will then have 21 days to respond to that motion.

## CONCLUSION

Defendants' motion to compel, Docket No. 19, is granted in part and denied in part as more specifically described in the body of this opinion.

DATED August 1, 2019.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained. See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Id. Objections must be timely and specific in order to require review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).